UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

RHONDA L. WILSON,            )
    Plaintiff,           )
                    )
        v.                  )  Civ. No. 1:17-cv-1279
                    )
NANCY A. BERRYHILL,          )
    Defendant.           )

## REPORT AND RECOMMENDATION

Pursuant to the Social Security Act § 205(g), 42 U.S.C. § 405(g), Rhonda L. Wilson ("Plaintiff") seeks judicial review of the final decision of Nancy A. Berryhill ("Defendant"), the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act. On February 7, 2018, the certified Administrative Record ("R.") was filed under seal, pursuant to Local Civil Rules 5(B) and 7(C)(1). By March 13, 2018, both parties filed motions for summary judgment with briefs in support, which are now ripe for resolution.[1] Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned U.S. Magistrate Judge recommends, for the following reasons, that Plaintiff's Motion

---

1. The motions and briefs in this case include Plaintiff's Motion for Summary Judgement (Dkt. 14) ("Pl.'s Mot. Summ. J."), Plaintiff's Brief in Support of Motion for Summary Judgment (Dkt. 15) ("Pl.'s Br. Supp."), Defendant's Motion for Summary Judgment (Dkt. 17) ("Def.'s Mot. Summ. J."), the Memorandum of Law in Support of Defendant's Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment (Dkts. 18 & 19) ("Def.'s Mem. Supp. & Opp'n"), and Plaintiff's Reply to Defendant's Motion for Summary Judgment (Dkt. 23) ("Pl.'s Reply").

for Summary Judgment (Dkt. 14) be DENIED and Defendant's Motion

for Summary Judgment (Dkt. 17) be GRANTED.

## I. PROCEDURAL BACKGROUND

Plaintiff filed the presently disputed applications for DIB and SSI on August 13, 2012, alleging an inability to work due to her disabling conditions of fibromyalgia, sciatica, lumbar stenosis, post-traumatic stress syndrome, depression, and learning problems, with an alleged onset date ("AOD") of December 18, 2010. (R. at 428-31, 544-51.) Plaintiff's claims were first denied on January 31, 2013, then again on reconsideration on September 19, 2013. (Id. at 85-108, 111-38.) On October 7, 2013, Plaintiff filed a request for a hearing in front of an administrative law judge ("ALJ"). (Id. at 203.) The hearing was held in front of an ALJ on August 20, 2015, during which the testimonies of Plaintiff and a vocational expert were taken. (Id. at 63-84.) At the hearing, Plaintiff amended her AOD to October 2, 2012. (Id. at 65-66, 494.) The ALJ issued a decision denying Plaintiff's claims on October 22, 2015. (Id. at 141-64.) Plaintiff requested a review of the ALJ's decision on October 22, 2015. (Id. at 256.) On October 24, 2016, the Appeals Council for the Office of Disability and Adjudication and Review ("Appeals Council") issued an order remanding Plaintiff's case, stating that the ALJ erred by failing to evaluate the source opinions from Linh Harbes-Thai, LPC. (Id. at 175-78.)

In accordance with the Appeals Council's order, the second hearing was held in front of an ALJ on July 6, 2017, during which the testimonies of Plaintiff and vocational expert Dr. Quintin Boston were taken. (Id. at 34-62.) The ALJ issued a decision denying Plaintiff's claims on July 24, 2017. (Id. at 8-25.) On July 27, 2017, Plaintiff requested review of the ALJ's decision to the Appeals Council. (Id. at 427.) The Appeals Council denied Plaintiff's request for review on September 9, 2017, making the ALJ's decision the final decision of Defendant. (Id. at 1-5.) Plaintiff filed her Complaint (Dkt. 1) for judicial review of Defendant's decision on November 13, 2017. Defendant filed her Answer (Dkt. 8) on February 6, 2018, and then filed corrected versions of her Answer (Dkts. 8 & 9) on February 7, 2018. By March 13, 2018, both Plaintiff and Defendant filed motions for summary judgment. The matter is now ripe for review.

## II. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of Defendant's final decision is limited to determining whether the ALJ's decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as

3

adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla but less than a preponderance. <u>Hays</u>, 907 F.2d at 1456. While the standard is high, where the ALJ's determination is not supported by substantial evidence on the record, or where the ALJ has made an error of law, the district court must reverse the decision. <u>Coffman v. Bowen</u>, 829 F.2d 514, 517 (4th Cir. 1987).

In reviewing for substantial evidence, the Court must examine the record as a whole, but it may not "undertake to re-weigh the conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (citing <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996)). The correct law to be applied includes the Social Security Act, its implementing regulations, and controlling case law. <u>See Coffman</u>, 829 F.2d at 517-18. Moreover, relevant law charges Defendant with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of a claimant, not the reviewing district court. <u>See Hays</u>, 907 F.2d at 1456-57. When there are situations in which "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," then "the responsibility for that decision falls on the [ALJ]." <u>Craig</u>, 76 F.3d at 589 (quoting <u>Walker v. Bowen</u>, 834

4

F.2d 635, 640 (7th Cir. 1987)). Therefore, the substantial evidence standard essentially creates "a zone of choice within which the decisionmakers can go either way, without interference by the courts," and so "[a]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" Dunn v. Colvin, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting Clarke v. Bowen, 843 F.2d 271, 272-73 (8th Cir. 1988)). With this standard in mind, the undersigned evaluates the ALJ's findings and decision.

### III. THE ALJ'S DECISION

An ALJ is required to employ a five-step sequential evaluation in every Social Security disability claim analysis to determine a claimant's eligibility. A reviewing district court examines this five-step process on appeal to determine whether the correct legal standards were applied in this case, and whether Defendant's resulting decision is supported by substantial evidence in the record. 20 C.F.R. §§ 404.1520, 416.920. In accordance with the five-step sequential analysis, the ALJ made the following findings of fact and conclusions of law.

At step one of the sequential evaluation, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 2, 2012, Plaintiff's amended AOD. (R. at 14.) At step two of the sequential evaluation, the ALJ found that

Plaintiff had both physical and mental medically determinable impairments. (Id.) The physical medically determinable impairments were lumbar spondylosis, vitamin D deficiency, anemia, asthma, obesity, peptic ulcer disease, gastroesophageal reflux disease, sinusitis, and allergic rhinitis. (Id.) The mental medically determinable impairment was described as a mental impairment variously diagnosed as mood disorder not otherwise specified, a panic disorder with agoraphobia, post-traumatic stress disorder, major depressive disorder, anxiety disorder not otherwise specified, borderline personality disorder, depression, bipolar I disorder, schizoaffective disorder, borderline intellectual functioning, generalized anxiety disorder, other specified personality disorder, agoraphobia with panic disorder, and agoraphobia. (Id.) At step three of the sequential evaluation, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of the one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.) In between steps three and four of the sequential evaluation, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following limitations to:

- Only occasionally climb ramps and stairs, balance,

6

stoop, kneel, crouch, and crawl;
- Never climb ladders, ropes, or scaffolds;
- Avoid concentrated exposure to extreme heat, fumes, odors, dusts, gases, poor ventilation, and hazards;
- Performing simple, one-to-four step, routine, repetitive tasks in a low stress work environment, defined as a work environment which requires only occasional decision making, occasional changes in work setting, occasional contact with coworkers and supervisors, no contact with the general public, and no fast pace or production quotas.

(Id. at 17.) At step four of the sequential evaluation, the ALJ found that Plaintiff was unable to perform any past relevant work. (Id. at 23.) At step five of the sequential evaluation, the ALJ found that Plaintiff is able to perform jobs that exist in significant numbers in the national economy. (Id. at 24.) Therefore, the ALJ concluded that Plaintiff was not under a disability from her amended AOD of October 2, 2012, through the date of the ALJ's decision. (Id. at 25.)

IV. ANALYSIS

In appealing the ALJ's decision, Plaintiff argues that the ALJ improperly determined Plaintiff's RFC by failing to provide proper weight to the opinions of Linh Harbes-Thai, a licensed professional counselor that Plaintiff saw consistently while receiving treatment at the Alexandria Community Services Board. (Pl.'s Br. Supp. at 6.) Specifically, Plaintiff asserts that Ms. Harbes-Thai's opinions should have been given greater weight, which would have resulted in greater functional restrictions for Plaintiff's RFC. (Id.) In response, Defendant argues that the

7

ALJ's decision to assign Ms. Harbes-Thai's opinions little weight is supported by substantial evidence. (Def.'s Mem. Supp. & Opp'n at 20.) The undersigned analyzes Plaintiff's argument on appeal by setting out the applicable law, reviewing and considering the opinions of Ms. Harbes-Thai, and reviewing the ALJ's evaluation of the opinions of Ms. Harbes-Thai.

## A. Applicable Law

The question over the weight to be assigned to Ms. Harbes-Thai's opinions speaks to the ultimate determination of Plaintiff's RFC. After step three of an ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(e)-(f), 404.1545(a)(1), 416.902(e)-(f), 416.945(a)(1). In analyzing a claimant's RFC, an ALJ must assess the nature and extent of the claimant's mental limitations, "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting," and then determine the claimant's RFC for work activity on a regular and continuing basis. Id. §§ 404.1545(c), 416.945(c). Opinions by medical professionals, whether "acceptable medical sources" or "other sources," are one type of evidence that an ALJ is to consider in determining a claimant's RFC. Id. § 404.1527(b); SSR 06-03p, 2006 WL 2329939, at *4 (Aug.

8

9, 2006).[2]

When the opinions by medical professionals are inconsistent with each other or with other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. §§ 404.1527(c)(2)-(6), (d), 416.927(c)(2)-(6), (d); SSR 06-03p, 2006 WL 2329939, at *5. In evaluating an opinion from "other sources," such as a counselor, an ALJ is to consider the following factors:

- How long the source has known and how frequently the source has seen the individual;
- How consistent the opinion is with other evidence;
- The degree to which the source presents relevant evidence to support an opinion;
- How well the source explains the opinion;
- Whether the source has a specialty or area of expertise related to the individual's impairment(s); and
- Any other factors that tend to support or refute the opinion.

SSR 06-03p, 2006 WL 2329939, at *2, 4-5. However, each of the aforementioned factors will not always apply in every case. Id. at *5. Under the substantial evidence standard, "[a]n ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies, or has failed to give a sufficient reason for the weight afforded a

---

2. In March 2017, the Social Security Administration rescinded SSR 06-03p, but the rescission was only effective for claims filed on or after March 27, 2017. See Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15,263 (Mar. 27, 2017). Therefore, Plaintiff's claim is still subject to SSR 06-03p.

particular opinion." <u>Dunn</u>, 607 F. App'x at 267 (citations and quotations omitted).

### B. Opinions of Linh Harbes-Thai, LPC

Ms. Harbes-Thai consistently noted that her treatment of Plaintiff began on October 2, 2012. (R. at 714, 857.) As a licensed professional counselor, Ms. Harbes-Thai provided multiple opinions about Plaintiff's mental health limitations. Ms. Harbes-Thai's opinions, when addressing Plaintiff's ability to work, generally concluded that Plaintiff had limitations in all areas of mental functioning and therefore could not function in full-time work or work that required human interaction.

In a mental status evaluation dated January 28, 2013, which was cosigned by psychiatrist Dr. Lakshmi Rao,[3] Ms. Harbes-Thai completed a mental status evaluation of Plaintiff and diagnosed Plaintiff with post-traumatic stress disorder, panic disorder

---

3. The undersigned does not consider the fact that Dr. Rao cosigned Ms. Harbes-Thai's January 28, 2013 mental status evaluation of Plaintiff to be relevant in analyzing the ALJ's evaluation of Ms. Harbes-Thai's opinions. Plaintiff consistently points out that Dr. Rao cosigned Ms. Harbes-Thai's January 28, 2013 mental status evaluation, implying that Ms. Harbes-Thai's opinions should be given more weight in some way due to the support of Dr. Rao, as Dr. Rao is an acceptable medical source pursuant to 20 C.F.R. §§ 404.1502 and 416.902. (Pl.'s Br. Supp. at 4, 7, 9; Pl.'s Reply at 3.) However, even opinions from acceptable medical sources are evaluated and assigned weight when inconsistent with other opinion evidence or objective medical evidence. 20 C.F.R. §§ 404.1527(c)(2)-(6), (d), 416.927(c)(2)-(6), (d). In this case, upon consideration, the ALJ also gave little weight to the opinions of Dr. Rao as Plaintiff's psychiatrist. (R. at 22-23.) Therefore, the ALJ had no obligation to provide more weight to Ms. Harbes-Thai's opinions in general, or to the January 28, 2013 mental status evaluation in particular, just because Dr. Rao cosigned the January 28, 2013 mental status evaluation. Instead, it is appropriate to consider Ms. Harbes-Thai's January 28, 2013 mental status evaluation of Plaintiff in the same way the undersigned considers Ms. Harbes-Thai's other evaluations. This is especially appropriate in light of Plaintiff not challenging the ALJ assigning little weight to Dr. Rao's opinions.

with agoraphobia, major recurrent depression. (Id. at 714-18.)
With regards to Plaintiff's ability to work, Ms. Harbes-Thai
stated that Plaintiff quit her jobs because she found it too
difficult to manage her anxiety. (Id. at 718.)

In a mental status evaluation dated July 26, 2013, Ms.
Harbes-Thai again completed a mental status evaluation of
Plaintiff and diagnosed Plaintiff with post-traumatic stress
disorder, panic disorder with agoraphobia, and major depression
disorder. (Id. at 857-61.) With regards to Plaintiff's ability
to work, Ms. Harbes-Thai stated that Plaintiff's anxiety
affected every area of her life, including her ability to
function at work. (Id. at 861.)

In a letter dated March 13, 2014, Ms. Harbes-Thai stated
that Plaintiff had manifestations of anxiety and depressive
symptoms to some degree each day, including high anxiety, panic
attacks, headaches, dizziness, nausea, tunnel-vision, ringing in
ear, and physical pain, with the manifestations being brought
about by leaving the house, not being with her children, and
dealing with people. (Id.) In the letter, Ms. Harbes-Thai also
stated that Plaintiff reported low energy, fatigue, anhedonia,
trouble sleeping, feelings of isolation, perseveration about
past and present stressors, experiencing intrusive memories of
past trauma, and suicidal ideations. (Id.) The letter did not
contain an explicit opinion on Plaintiff's ability to work.

11

On October 15, 2014, Ms. Harbes-Thai completed a diagnostic review of Plaintiff and diagnosed Plaintiff with post-traumatic stress disorder, bipolar disorder, noncompliance with treatment, and personality disorder. (Id. at 1032-34, 1313-15.) With regards to Plaintiff's ability to work, Ms. Harbes-Thai noted that Plaintiff's anxiety around people made it very difficult for Plaintiff to work on a regular, consistent basis, that Plaintiff often took numerous breaks and had to call in sick, and that when she did work, Plaintiff experienced great exhaustion and migraines making it difficult to function. (Id. at 1034, 1315.)

In a letter dated September 17, 2015, which also  included medical assessments of Plaintiff, Ms. Harbes-Thai opined that Plaintiff could not function at regular, full-time jobs that required human interaction on a daily basis. (Id. at 1135-41.) In the attached medical assessments, Ms. Harbes-Thai stated that Plaintiff has diagnoses of post-traumatic stress disorder and pervasive depressive disorder, and further stated that Plaintiff had depressive syndrome, anxiety related disorders, persistent irrational fears, recurrent panic attacks, and recurrent intrusive recollections. (Id. at 1136-37.) Ms. Harbes-Thai stated that, as a result, Plaintiff had functional limitations in daily activities, social functioning, concentration, persistence, and pace, as well as episodes of deterioration in

12

work and an inability to attend work. (Id. at 1137-38.) For
occupational adjustments, Ms. Harbes-Thai noted that Plaintiff
had a good ability to follow rules, use judgment, interact with
supervisors, and function independently, and that Plaintiff had
fair ability to relate to co-workers, deal with the public, deal
with work stress, and maintain attention and concentration. (Id.
at 1139.) For performance adjustments, Ms. Harbes-Thai noted
that Plaintiff had a good ability to understand, remember, and
carry out detailed and simple job instructions, and that
Plaintiff had a fair ability to understand, remember, and carry
out complex work instructions. (Id. at 1140.) For personal-
social adjustments, Ms. Harbes-Thai noted that Plaintiff had a
good ability maintain personal appearance, and that Plaintiff
had a fair ability to behave in an emotionally stable manner,
relate predictably in social situations, and demonstrate
reliability. (Id. at 1140.) Ms. Harbes-Thai expected that
Plaintiff would have to miss work more than three times a month.
(Id. at 1138, 1141.)

On October 22, 2015, Ms. Harbes-Thai completed a diagnostic
review of Plaintiff and diagnosed Plaintiff with schizoaffective
disorder, generalized anxiety disorder, post-traumatic stress
disorder, agoraphobia with panic disorder, and other specified
personality disorder. (Id. at 1368.) With regards to Plaintiff's
ability to work, Ms. Harbes-Thai again noted that Plaintiff's

anxiety around people made it very difficult for Plaintiff to work on a regular, consistent basis, that Plaintiff often took numerous breaks and had to call in sick, and that when she did work, Plaintiff experienced great exhaustion and migraines making it difficult to function. (Id. at 1369.)

On December 14, 2015, Ms. Harbes-Thai completed a diagnostic review of Plaintiff and diagnosed Plaintiff with schizoaffective disorder, post-traumatic stress disorder, generalized anxiety disorder, agoraphobia, and other specified personality disorder. (Id. at 1380.) With regards to Plaintiff's ability to work, Ms. Harbes-Thai once again noted that Plaintiff's anxiety around people made it very difficult for Plaintiff to work on a regular, consistent basis, that Plaintiff often took numerous breaks and had to call in sick, and that when she did work, Plaintiff experienced great exhaustion and migraines making it difficult to function. (Id. at 1381.)

Ms. Harbes-Thai also completed multiple annual reviews of Plaintiff, which summarized Plaintiff's mental health statuses and diagnosed Plaintiff with post-traumatic stress disorder and various depressive, anxiety, panic, and/or personality disorders. (Id. at 996-1004, 1035-43, 1268-76, 1304-12, 1356-63.) Ms. Harbes-Thai also completed multiple reviews of serious mental illness for Plaintiff, diagnosing Plaintiff with major depressive disorder, post-traumatic stress disorder, and panic

disorder with agoraphobia, and opining that Plaintiff had a serious mental illness as defined by Medicaid. (Id. at 1028-31, 1264-67, 1277-80, 1322-25, 1364-67.) Neither the annual reviews nor the reviews of serious mental illness contained explicit opinions on Plaintiff's ability to work.

### C. The ALJ's Evaluation of Ms. Harbes-Thai's Opinions

Upon review of the record, it is clear that the ALJ's determination to assign little weight to the opinions of Ms. Harbes-Thai was both in accordance with the relevant Social Security regulations and otherwise supported by substantial evidence. In this case, the ALJ did not find all the medical opinions to be consistent, and therefore evaluated and assigned weight to each medical opinion source. (Id. at 22-23.) For Ms. Harbes-Thai's opinions, the ALJ considered the treating history of Ms. Harbes-Thai and Plaintiff as well as the consistency of Ms. Harbes-Thai's opinions with other evidence. (Id. at 23.)

Upon consideration, the ALJ assigned little weight to the opinions of Ms. Harbes-Thai, who the ALJ referred to as "claimant's counselor." (Id. at 23.) The ALJ stated that Ms. Harbes-Thai's opinion that Plaintiff had "marked limitation in all areas of basic mental functioning" and that Plaintiff "could not function at jobs that require human interaction or a full-time commitment" were inconsistent when compared to two considerations. (Id.) First, the ALJ stated that Plaintiff's own

15

reports of completing activities that showcased work-related mental functioning were inconsistent with a finding of disability. (Id.) The ALJ specifically noted that such activities included handling her own finances, using public transportation, and taking care of her minor children. (Id.) Second, the ALJ stated that Plaintiff's "mainly stable mental status examinations, even in the context of medication nonadherence" and "benign treatment history" were also inconsistent with a finding of disability. (Id.) The ALJ specifically characterized the mental status examinations as stable due to them identifying "some irritability and agitation" but also identifying "mainly intact behavior and cognition" along with an appropriate fund of knowledge. (Id.) Despite acknowledging the long-term professional relationship Ms. Harbes-Thai had with Plaintiff, the ALJ reasoned that the aforementioned inconsistencies resulted in the assigning of little weight to Ms. Harbes-Thai's opinions. (Id.)

Both of the ALJ's stated reasons for finding Ms. Harbes-Thai's reasons to be inconsistent with a finding of disability were supported by ample evidence in the record. The two stated reasons were that Plaintiff's own reports of completing activities showcased work-related mental functioning and that Plaintiff had mainly stable mental status examinations and a benign treatment history, even in the context of medication

nonadherence. Each reason is considered in turn below.

First, the ALJ's determination that Plaintiff's own reports of completing activities showcased work-related mental functioning is supported in the record. With regards to handling finances, in her self-completed function reports, Plaintiff reported being able to pay bills, count change, handle a savings account, and use checkbooks and money orders. (Id. at 565, 601.) Plaintiff stated that those abilities did not change since her alleged disabling condition began, aside from having less money to handle. (Id. at 566, 602.) With regards to using public transportation, in her self-completed function reports, Plaintiff reported being able to use public transportation. (Id. at 565, 601.) Plaintiff first noted that she used public transportation alone, but then later noted that she used public transportation when accompanied by another. (Id.) With regards to taking care of her minor children, in her self-completed function report, Plaintiff reported caring for her children by dressing and cleaning them, preparing them for school, and cooking for them. (Id. at 562-64, 598-600.)

The ALJ has not dredged up Plaintiff's reports of the aforementioned activities as mere inconsistencies, as Plaintiff's reports have support elsewhere in the record. In a third-party function report, Plaintiff's mother also reported that Plaintiff completed activities that showcased work-related

17

mental functioning. With regards to handling finances, Plaintiff's mother reported that Plaintiff was able to pay bills, count change, handle a savings account, and use checkbooks and money orders, and that those abilities did not change since her alleged disabling condition began. (Id. at 575.) With regards to using public transportation, Plaintiff's mother reported that Plaintiff used public transportation alone. (Id. at 574.) With regards to caring for her children, Plaintiff's mother reported that Plaintiff took her children to school. (Id. at 574.) Further, even Ms. Harbes-Thai herself stated in mental status evaluations dated January 28, 2013, and July 26, 2013, that there was no evidence Plaintiff could not manage her own funds and that Plaintiff tended to her children every day and completed tasks such as getting her children ready for school and taking her children to and from bus stops. (Id. at 715, 718, 858, 861.) Other medical records by Ms. Harbes-Thai also note that Plaintiff regularly tended to her children by getting them ready for school (Id. at 1028, 1032, 1037.)

Second, the ALJ's determination that Plaintiff had mainly stable mental status examinations and a benign treatment history, even in the context of medication nonadherence, is also supported in the record. The stable mental status examinations, benign treatment, and medication nonadherence are each addressed below in turn.

18

With regards to Plaintiff's mental status examinations, Plaintiff underwent at least twenty-four objective mental status examinations by five different medical professionals between her AOD of October 2, 2012, and March 16, 2017. While the objective mental status examinations did not contain identical notes, they can be summarized as noting that Plaintiff generally: was alert and responsive; had a well-groomed appearance, or otherwise had an appearance was within normal limits; had good eye contact, eye contact with averted gazes, intermittent eye contact, or no eye contact; had a cooperative and pleasant attitude or a passive, sarcastic, guarded, and aloof attitude; had unremarkable behavior and motor disturbance, aside from some notes of psychomotor retardation; was fully oriented or had an orientation within normal limits; had soft or slow speech; had a sad, anxious, depressed, frustrated, dysphoric, or apathetic mood; had a depressed, flat, blunted, detached, or decreased affect or a range of affect within normal limits; was cognitively intact; had a logical, goal directed, or coherent thought process; had normal or depressive, but not delusional, thought content; had normal perceptions; had normal abstraction; had good, fair, or impaired judgment; had either some impaired memory or a memory within normal limits; and had fair or limited insight or insight within normal limits. (Id. at 679-80, 691, 758-59, 777, 782, 920-21, 927, 932, 936, 940-41, 985-86, 991-93,

19

1015, 1019, 1025, 1044, 1048, 1054, 1233-34, 1240, 1245, 1249, 1253-54, 1259-61, 1284-85, 1288, 1294, 1300, 1329, 1335, 1339, 1345, 1352, 1373, 1377, 1385-86, 1398, 1409, 1419.) Such objective mental status examinations support the ALJ's determination of Plaintiff having mainly stable mental status examinations, as they can fairly be characterized as showing some irritability and agitation but otherwise showing mainly intact behavior and cognition. Therefore, the record shows that the ALJ determining that Plaintiff had mainly stable mental status examinations is supported by substantial evidence.

With regards to Plaintiff's mental health treatment history, from her AOD of October 2, 2012, to March 16, 2017, Plaintiff was consistently given instructions by the various medical professionals to take medication in accordance with prescription drug management plans to treat her mental health symptoms, as well as to have follow ups with her primary care physician or therapist. (Id. at 681, 692, 773, 777, 783, 923, 928, 932, 937, 942, 987, 994, 1016, 1020, 1026, 1046, 1049, 1055, 1236, 1240, 1246, 1250, 1255, 1262, 1286, 1289, 1295, 1302, 1320, 1330, 1336, 1340, 1346, 1353, 1374, 1378, 1388, 1399-1400, 1410-11, 1421.) The record is devoid of any evidence of psychiatric hospitalization, inpatient treatments, or need for other emergency services. Therefore, the record shows that the ALJ determining that Plaintiff's treatment history was

20

benign is also supported by substantial evidence.

Finally, with regards to medication nonadherence, Plaintiff was regularly noted as not adhering to her prescribed medication schedule or otherwise not complying with treatments. (Id. at 775, 930, 1017, 1021, 1027, 1029, 1032, 1037, 1238, 1306, 1313, 1321, 1323, 1331, 1337, 1341, 1347, 1354.) Therefore, the ALJ's consideration of Plaintiff's mental status examinations and treatment history in light of medication nonadherence was also supported by substantial evidence.

As explained, every aspect of the ALJ's decision was supported by substantial evidence. No indication exists that the ALJ "dredged up specious inconsistencies" or that the ALJ "failed to give a sufficient reason" in assigning Ms. Harbes-Thai's opinions little weight. See Dunn, 607 F. App'x at 267. The undersigned acknowledges Plaintiff's arguments that Ms. Harbes-Thai's opinions should have been granted greater weight due to Ms. Harbes-Thai's opinions being consistent with each other, Ms. Harbes-Thai having a significant relationship with Plaintiff, and Ms. Harbes-Thai's opinions being supported by the evidence of record. (Pl.'s Br. Supp. at 10; Pl.'s Reply at 3.) As such, Plaintiff has certainly put forth enough of an argument to show that reasonable minds could differ as to the decision on whether Plaintiff is or is not disabled, but "the responsibility for that decision falls on [the ALJ]," not on Plaintiff. See

Craig, 76 F.3d at 589. Ultimately, because the ALJ's reasoning and decision are supported by substantial evidence, the ALJ's decision falls squarely within the "zone of choice within which the decisionmakers can go either way, without interference by the courts," as imagined by the Fourth Circuit. Dunn, 607 F. App'x at 274. As required, the undersigned will not interfere with such a decision.

## V. RECOMMENDATION

For the reasons set forth, the undersigned U.S. Magistrate Judge finds that the ALJ's decision to deny Plaintiff's claim for DIB and SSI pursuant to Titles II and XVI of the Social Security Act was supported by substantial evidence. Therefore, the undersigned recommends that Plaintiff's Motion for Summary Judgment (Dkt. 14) be DENIED and Defendant's Motion for Summary Judgment (Dkt. 17) be GRANTED.

VI. <u>NOTICE</u>

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

May 2, 2018
Alexandria, Virginia

23